[Civ. No. 7254. First Appellate District, Division Two.—February 11, 1930.]

In the Matter of the Estate of MILTON A. LEE, Deceased. WILLIAM F. LEE, Appellant; EARNEST A. LEE et al., Respondents.

Edwin V. McKenzie, J. H. Sapiro and Frank J. Mahoney for Appellant.

Raymond Perry, Olin L. Berry and Delbert L. Berry for Respondents Hattie Larkins and Maud Larkins.

NOURSE, Acting P. J.—Written objections to the petition of the executor of the last will and testament of Milton A. Lee for the final distribution of the estate were filed. The probate court sustained a demurrer to these objections and this appeal is taken from that order.

The will, which was holographic in form, reads as follows:

"San Francisco, 4/1/1925.

"I, Milton A. Lee, do make this will in my own hand-writing. At my death I leave the following to each named.

Minnie Lee my wife one fifth of my estate.
Earnest Lee " brother one fifth of my estate.
James Lee " brother one fifth of my estate.
Maud Larkins " sister one fifth of my estate.
Hattie Larkins " sister one fifth of my estate.

"Instructions to Brothers & Sisters. Take care of Brother Will.

"I appoint as administrator the Master of my Lodge Oriental #144 F. A. M.

"Sig. MILTON A. LEE."

 The sole question involved on this appeal is whether the precatory words addressed to the brothers and sisters of deceased—"take care of Brother Will"—are such that they would create a trust in favor of Will over the four-fifths of the estate devised to the brothers and sisters named in the will. The subject of precatory trusts is fully discussed in an elaborate note found in 49 A. L. R., pages 10 to 103, wherein it is said (p. 22): "The crucial test, then, is whether the wish, desire, or recommendation expressed by the testator, is meant to govern the conduct of the one to whom it is addressed, or whether it is merely an indication of that which he thinks would be a reasonable exercise of the discretion of such person, leaving it, however, to the person to exercise his own discretion. Where a bequest is given, coupled with precatory words which leave the legatee free to act or not to act, such words are to be treated as an appeal to the conscience and affections of the legatee, and nothing more." In the same note reference is made to the history of the two rules—the early English rule, which has been followed to some extent in the courts of this country, held that mere precatory expressions were deemed to raise a trust unless it appeared from the context to be to the contrary. In other words, the use of precatory words was held to create a presumption that a trust was intended. This rule, it is explained, is based upon the historical fact that all trusts, no matter how expressed, were only of precatory force and imposed no binding obligation. The

other rule, which is based upon later English cases and most of the American cases, reverses this presumption and holds that mere precatory expressions are presumptively indicative of nothing more than request or expectation unless the context, or the circumstances surrounding the testator at the time of the making of the will, show that the testator intended to create a trust and to leave the legatee no option in the matter. Though the early English rule is still followed in some American jurisdictions, the instances in which a trust has been held to exist have been decidedly outnumbered in the cases in which it was held that no trust was created.

The California courts have adopted the later rule in line with the great weight of authority. The cases following the rule are so numerous that the only difficulty is in selecting the citations. The opinion in *Estate of Browne*, 175 Cal. 361, 362 [165 Pac. 960], aptly states the situation as follows: "Whatever may be the rule elsewhere, 'it is the settled law in California that precatory words are not to be regarded as creating a trust unless it appear that the testator intended to impose an imperative obligation and to exclude the exercise of discretion on the part of the person to whom the recommendatory words are addressed.' (*Estate of Purcell*, 167 Cal. 176–179 [138 Pac. 704, 705].) This rule is derived from and supported by numerous authorities, including *Estate of Mitchell*, 160 Cal. 618 [117 Pac. 774], *Estate of Marti*, 132 Cal. 666 [61 Pac. 964, 64 Pac. 1071], and *Kauffman* v. *Gries*, 141 Cal. 295 [74 Pac. 846]. It is to be observed that the testator's desire is expressed not to his executor but to one of the beneficiaries under his will. Under such circumstances it may only be regarded as a mere request and not as partaking of the nature of a command. (*Estate of Marti, supra; Estate of Pforr*, 144 Cal. 121 [77 Pac. 825].)"

Appellant relies upon *Colton* v. *Colton*, 127 U. S. 300 [32 L. Ed. 138, 8 Sup. Ct. Rep. 1164, 1167], where the testator after making a gift of all his property to his wife recommended to her "the care and protection of my mother and sister, and request her to make such provision for them as in her judgment will be best." In interpreting the will the Supreme Court held that it created a trust over all the

property of the decedent in favor of the mother and sister of the testator. The Colton case has been cited in numerous decisions, both in our courts and in other jurisdictions where the later rule of construction is followed. It repeatedly has been rejected in these jurisdictions as out of harmony with this later rule and in some of the cases it has been distinguished on the narrow ground that the precatory expressions were joined in the same sentence with the words of conveyance and this was taken as an indication of the intention of the testator to create a trust. Any uncertainty as to the authority of the Colton case in this state was set at rest in the *Estate of Mitchell*, 160 Cal. 622 [117 Pac. 774, 776], where the Supreme Court said: "If that decision was in any particular inconsistent with our own decisions on the subject, it would not be binding authority. The interpretation of wills is not a question upon which the federal courts control the state courts."

This rule of decision is recognized and approved in section 1322 of the Civil Code, which provides: "A clear and distinct devise or bequest cannot be affected by any reasons assigned therefor, or by any other words not equally clear and distinct. . . . " Here the unconditional devise of one-fifth of the estate to each of the brothers and sisters was clear and distinct, whereas the instructions to his brothers and sisters "to take care of Brother Will" were not equally clear and distinct, and they cannot, therefore, under the provisions of this section, affect the unconditional devises found in the will. This is emphasized by the admitted fact alleged in the petition that the deceased left seven brothers and sisters besides his brother Will; that the admonition to take care of Will was addressed to his brothers and sisters generally, whereas devises were made to but four of them. It may be added that here lies the distinction in a large number of cases cited by appellant. Where the precatory expressions are found in the same sentence or clause with the words of devise or gift this frequently has been taken as indicating the intention of the testator to make a conditional gift. But in examining those cases it will be found that almost invariably the precatory expressions are directed to the executor or administrator who is also made a devisee under the will. Without analyzing these cases at length we are satisfied that the rule applica-

ble here is that found in *Estate of Browne, supra,* and for that reason the order is affirmed.

Sturtevant, J., and Dooling, J., *pro tem.,* concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 12, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 10, 1930.

All the Justices present concurred.