[Civ. No. 3055. Fourth Dist. Mar. 25, 1943.]

Estate of SARAH C. HOOD, Deceased. CATHERINE BROWER et al., Respondents, v. LOUIS SLATER et al., as Trustees, etc., Appellants.

Milton M. Dearing for Appellants.

Thomas F. Lopez and Lawrence W. Young for Respondents.

BARNARD, P. J.—Sarah C. Hood died on October 21, 1940, leaving as her sole heirs two aunts, who are the respondents here. In her will she mentioned the respondents and stated that she was leaving them nothing for the reason that they have sufficient means of their own. After making certain specific bequests, which are not here in question, she left the remainder of her estate in trust for certain named purposes, and with directions to the trustees. Upon the filing of a final account and petition for distribution the respondents filed a "Petition to Construe Will" in which it was alleged, in substance, that the trust provisions of this will are invalid, that under a proper interpretation of said provisions it should be held that the decedent died intestate as to the residue of her estate, and that said petitioners are entitled to have the residue of the estate distributed to them, share and share alike. Answers to this petition were filed and, after a hearing, findings were made and a judgment was entered in which it was adjudged and decreed that the trust provisions of said will are illegal and void, that the respondents are the sole heirs of the said decedent, and that they are entitled to share equally in the residue of said estate. The trustees named in the will have appealed from these portions of the judgment.

The ninth subdivision of the will, which is material here, reads as follows:

"In the event that there are any moneys or property in the hands of my executors after the payment of the bequests as hereinabove set forth, then and in that event I herewith give, devise and bequeath all of said money and property to Louis Slater of Fresno, California, and Gilbert H. Jertberg of Fresno, California, or the survivor of them, in trust,

however, under the following directions and for the following purposes, to-wit:

"My said Trustees are authorized and empowered to take over any and all property or moneys which I may have and, without the necessity of first obtaining any court order therefor, pay either the income therefrom or the principal thereof to such charities or to such individuals or to such charitable organizations as they shall see fit. They may turn over said moneys in such sums or amounts as they shall see fit, having in mind at all times, however, that it is my express intention and desire to have said moneys and property used by my said Trustees for such purposes as shall do the most good to charities or individuals who are in need of assistance. It is further my desire that my Trustees shall try to aid those individuals and those organizations and those charities where the moneys which are given to them shall do the most direct good, it being my intention and desire that said moneys shall be used for such purposes as will secure a direct benefit to the sick, blind, and those in need of support, and that such moneys shall not go to any organization which has an overhead to carry on, but shall go, as hereinbefore specified, where said moneys and all thereof can do the most direct good.

"It is my express desire that my said Trustees shall use up the principal and the income from said property for the purposes as hereinabove set forth within a reasonable time after the same is distributed to them in trust, and in no event shall said trust estate be held open or operated for a longer period than five years from the date of the distribution of said trust estate to them, and it is further my desire and wish that in the spending of any and all of the said sums by my said Trustees that they use said moneys locally in and around the City of Fresno, inasmuch as I desire most of all to benefit those in the community where my husband and myself made our home."

The controlling question here presented is as to whether the above quoted portions of this will create a valid charitable trust. The respondents contend that the first sentence of the second paragraph is the only part of these provisions which contain directions as to what the trustees are authorized and empowered to do; that this authorization is in the disjunctive and permits the trustees to pay the

trust funds to such charities or such individuals as they shall see fit; that the remainder of the provisions in this subdivision of the will are precatory in nature, being merely recommendations and not express directions; that these precatory provisions are not binding upon the trustees; that the trustees are thus left free to give the money either to charities or to such individuals as they shall see fit; and that it having been attempted to mingle a charitable trust with a noncharitable trust the entire bequest is void, citing such cases as *Estate of Hinckley,* 58 Cal. 457 and *Estate of Sutro,* 155 Cal. 727 [102 P. 920].

In *Estate of Marti,* 132 Cal. 666 [61 P. 964, 64 P. 1071], it is said:

"The cardinal rule for the construction of all wills is to ascertain the intention of the testator; and this intention is to be ascertained from the words of his will, taking into view, when necessary or appropriate, the circumstances under which it was made."

██ Even precatory words are regarded as creating a trust when it clearly appears that the testator intended to impose an imperative obligation and to exclude the exercise of discretion on the part of the person to whom they are addressed. (*Estate of Purcell,* 167 Cal. 176 [138 P. 704]; *Estate of Browne,* 175 Cal. 361 [165 P. 960].) Some of the rules of interpretation are thus stated in *Estate of Mitchell,* 160 Cal. 618 [117 P. 774]:

" 'Precatory words may or may not create a trust, according as they are used, and whether, in any particular will, they have been used for this purpose will depend upon the construction to be given to that will. The question for determination is, whether the devisee or legatee is the beneficiary, or merely a trustee for others, of the gift bestowed upon him; whether the wish or desire or recommendation that is expressed by the testator is meant to govern the conduct of the party to whom it is addressed, or whether it is merely an indication of that which he thinks would be a reasonable exercise of the discretion of that party, leaving it, however, to the party to exercise his own discretion. In order to make him a trustee, it must appear that the testator intended to impose an imperative obligation upon him, and for that pur-

pose has used words which exclude the exercise of discretion or option in reference to the act in question.' ''

The usual rule is that an expression of desire on the part of a testator is a mere request when addressed to his devisee but is to be construed as a command when addressed to his executor. (*Estate of Lawrence,* 17 Cal.2d 1 [108 P.2d 893]; *Estate of Mallon,* 34 Cal.App.2d 147 [93 P.2d 245].) No good reason appears why the expression of such a desire should not similarly be construed as a command when it is addressed to a trustee, particularly when it is expressly set forth as a part of the directions to the trustee and as stating one of the purposes of the trust. In *Estate of Tsheppe,* 19 Cal.App.2d 314 [65 P.2d 830], the court said:

"The authorities are numerous construing precatory words and in this connection it should be noted that in each case, almost without exception, the ultimate determination of the question involved depended upon the context of the will and the circumstances surrounding the use of the precatory word."

██  Gifts to charitable uses are favored and the language of wills is to be liberally construed in support of trusts established for such purposes. (*Estate of DeMars,* 20 Cal.App. 2d 514 [67 P.2d 374].) In *Estate of Somerville,* 12 Cal. App.2d 430 [55 P.2d 597], it is said: "The question is one of intention, to be collected from the language of the whole will; and where the general intention of the testator to create a charity appears therefrom the courts, in dealing with an ambiguous residuary clause, will lean in favor of a broad rather than a restricted construction." And in the article in 115 A.L.R. 1124, it is said:

" . . . the decisions which hold a bequest void for uncertainty because of the possible inclusion of noncharitable purposes or beneficiaries would seem, in the final analysis, to rest on the premise that the testator's underlying intention that only valid charitable purposes should be served is not clearly established."

██  Applying these principles to the problem before us we think the testatrix's intention clearly appears and that these provisions of this will should be upheld as creating a charitable trust. It seems obvious that the decedent was attempting to create such a trust. It also seems clear from the language used that her intention was to establish a trust solely for charitable purposes, and that she did not intend

to authorize the trustees to turn over any part of the residue of her estate to any individual who did not come within the class described in that part of the subdivision which the respondents contend is merely precatory in nature. The entire subdivision should be construed together and, thus construed, it discloses an intent on the part of the testatrix to outline a charitable plan which is to govern the actions of the trustees in administering the trust. It further appears that there was an intention to make the charitable plan thus outlined applicable to all of the residue of the estate which is affected by the trust, and that there was no intention to empower the trustees to use any portion of the residue for the benefit of individuals who did not come within the charitable class which is clearly shown to have been within the contemplation of the testatrix. The devise or bequest is made to the named trustees in trust "under the following directions and for the following purposes, to-wit:". While the next sentence provides that the trustees may pay the funds of the trust to such charities or to such individuals or to such charitable organizations as they shall see fit, the remaining provisions are not to be ignored. These provisions not only express the purpose for which the trust is created, but are a part of the directions to the trustees and are clearly intended to set forth the extent and nature of the powers given to the trustees. The following provisions disclose the express intentions and desires of the testatrix in creating the trust, which are that the trustees shall use such funds for the purpose of doing the most good to charities or to individuals who are in need of assistance and that such funds shall be used exclusively for such purposes as will secure a direct benefit to the "sick, blind and those in need of support." All of these latter provisions are expressly made a part of the directions given to the trustees. It would do violence to the clearly expressed purpose and intention of the testatrix to regard the first sentence of the second paragraph of this subdivision of the will as alone containing the directions to the trustees, and to regard all of the remaining provisions of this subdivision as merely precatory in nature. All of these provisions must be read together and, in their entirety, they constitute the directions to the trustees. They not only clearly express the intention of the testatrix with

respect to the purposes for which the trust was established, but they limit the powers and outline the duties of the trustees. The trustees cannot comply with the express terms of their trust except by devoting the funds of the trust to charitable purposes, whether these funds be turned over to charitable organizations or to individuals in need of charity. They have no discretion in this regard and the entire bequest to them is charitable in nature, and no part thereof can reasonably be construed as noncharitable. It follows that the court erred in holding that the ninth subdivision of this will is illegal and void.

The judgment is reversed, the appellants to recover their costs on apeal.

Marks, J., and Griffin, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied May 24, 1943. Gibson, C. J., Edmonds, J., and Traynor, J., voted for a hearing.